UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRACY PACHOTE, et al.,

          Plaintiffs,

     v.

COUNTY OF CONTRA COSTA, et al.,

          Defendants.

Case No. 21-cv-04097-SK

**ORDER ON MOTION TO EXCLUDE EXPERT WITNESS**

Regarding Docket No. 122

This matter comes before the Court upon consideration of Defendants' motion to exclude the expert testimony of Roger Clark ("Clark"), a proposed expert on police practices. Having carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion for the reasons set forth below.

**ANALYSIS**

**A.     Legal Standards.**

Pursuant to Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

District courts act as the gatekeeper for expert testimony by applying Rule 702 to ensure evidence is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (trial judges, as gatekeepers, must ensure that the expert testimony is relevant and reliable, "which does not include unsupported speculation and subjective beliefs."). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation omitted). Assessing an expert's reliability is a "fact-specific inquiry" that depends on "the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[T]he relevant reliability concerns may focus upon personal knowledge or experience" of the expert."). The party offering the expert carries the burden of proving admissibility. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Palantir Techs. Inc. v. Abramowitz*, 2022 WL 22913842, at *12 (N.D. Cal. Nov. 3, 2022) (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendment) ("[an expert] relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."); *640 Octavia, LLC v. Pieper*, 2019 WL 1201581, at *2 (N.D. Cal. Mar. 14, 2019) (finding expert report was "fundamentally flawed" where he relied "solely on his experience to explain the conclusions he drew from the discovery in this case without explaining why and how he came to his conclusions.").

"Federal Rule of Evidence 704(a) provides that expert testimony that is 'otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Mukhtar v. California State University*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002) (quoting Fed. R. Evid. 704(a)). However, "an expert witness cannot give an opinion as to [his] legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. . . . They do not testify

United States District Court
Northern District of California

about the law."). Such an opinion does not assist the jury in making a decision, but instead "attempts to substitute the expert's judgment for the jury's." *Mukhtar v. California State University*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002) (quoting *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir. 1994)), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.,* 740 F.3d 457 (9th Cir.2014).

"Courts have held that an expert's use of 'judicially defined' and 'legally specialized' terms constitutes an expression of opinion on an ultimate issue of law." *Monroe v. Griffin*, 2015 WL 5258115, at *6-7 (N.D. Cal. Sept. 9, 2015) (citing *Wiles v. Dep't of Educ.*, 2008 WL 4225846, at *1 (D. Haw. Sept. 11, 2008) (prohibiting expert witness from using "deliberate indifference" and "other judicially defined and/or legally specialized terms" while testifying); *see also Valtierra v. City of Los Angeles*, 2015 WL 1644894, at *6 (C.D. Cal. Apr. 13, 2015) (excluding expert's testimony that "the use of force was 'excessive' or 'unreasonable,' under the circumstances," but allowing expert's opinions to "be explored through hypothetical questioning so as to avoid invading the province of the jury"); *Estate of Bojcic v. City of San Jose*, 2007 WL 3314008, at *3 (N.D. Cal. Nov. 6, 2007) ("[W]hile [plaintiff's expert] may freely opine that [the officer] should not have acted in the manner that he did, or that he should have done something else, he should not be asked for or volunteer an opinion that [the officer] acted unconstitutionally or exercised 'excessive force.'")). As another court explained, in an excessive force case, the ultimate question is whether the conduct of the officer was objectively reasonable. *Petillo v. Jasso*, 2023 WL 5596531, at *2 (E.D. Cal. Aug. 29, 2023) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "As a result, courts have determined experts in excessive force cases may not testify conduct was 'grossly unlawful, unnecessary, and excessive violence.'" *Petillo*, 2023 WL 5596531, at *2 (quoting *Monroe v. Griffin*, 2015 WL 5258115, at *6-7).

"[I]n some excessive force cases, testimony about police standards and guidelines may be relevant." *Taylor v. Lemus*, 2015 WL 12698306, at *6 (C.D. Cal. June 17, 2015) (citing *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003). However, expert opinions as to what the law mandates or whether defendants were legally justified in using the level of force applied usurps the jury's role. *Id*. (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1468

United States District Court
Northern District of California

(9th Cir. 1994) (stating it is ultimately "the jury [that] is best suited to determine the reasonableness of an officer's conduct in light of the factual context in which it takes place").

As one court explained, although "police practices experts (including Mr. Clark) have testified in other cases, these cases often involve issues not present in this case where expert testimony is more helpful, such as the use and training of police dogs, or whether the use of deadly force or a particular *type* of force was appropriate." *Lorange v. Univ. of California Los Angeles*, 2012 WL 13114202, at *2 (C.D. Cal. July 24, 2012) (emphasis in original) (citing cases). Moreover, as the court in *Lorange* noted that, while "expert testimony comparing the conduct at issue with the 'industry standard' can be appropriate, the [California Peace Officer Standards and Training ("POST")] guidelines on excessive force quoted in Clark's report largely mimic the standard set forth in cases such as *Graham v. Connor*, 490 U.S. 386, 397 (1989)." *Lorange*, 2012 WL 13114202, at *3.

With these principles in mind, the Court will address Clark's specific opinions.

**B.      Clark's Opinions.**

**1.      Opinion 1.**

Clark's Opinion Number 1 is as follows:

> Deputy Nelson's presence at Ms. Pachote's door was a per se Consensual Encounter as trained and taught by POST. As such, Ms. Pachote had the constitutional right to refuse to talk to Deputy Nelson and demand no further contact. Deputy Nelson's refusal to disengage and depart was a violation of Ms. Pachote's Constitutional Rights (as trained and cited above.).

(Dkt. No. 122-2 (Clark's Expert Report).)

The Court GRANTS IN PART and DENIES IN PART Defendants' motion as to Opinion Number 1. Clark may testify as to the training officers receive in POST regarding consensual encounters. Moreover, given a *hypothetical* set of facts, Clark may opine as to whether such hypothetical facts constitute a consensual encounter. However, Plaintiffs are admonished that any hypotheticals must be based on the facts in evidence at trial. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record.").

4

United States District Court
Northern District of California

Moreover, Clark may not opine as to whether Defendants' encounter with Plaintiff actually was and remained a consensual encounter. By opining that "Nelson's refusal to disengage and depart was a violation of Ms. Pachote's Constitutional Rights", Clark would usurp the roll of the jury in determining what the facts were and determining the ultimate legal issue.

### 2.    Opinion 2.

Clark's Opinion Number 2 is as follows:

> There is nothing in the record to indicate that Ms. Pachote posed a credible threat to Deputy Nelson or any other Deputy at the scene. She was unarmed, and merely attempting to close her door after the consensual contact had been made. Her behavior simply did not justify the use of any physical force whatsoever. In my opinion all issues were easily resolved by "Officer presence - Verbal Skills" methods (as taught by post.) - including departing as requested by Ms. Pachote[.] Rather, Deputy Nelson failed to use the required more reasonable (less forceful) methods when dealing with Ms. Pachote, lunged into Ms. Pachote's residence, grabbed Ms. Pachote by the hair, pulled her out the residence by her hair, and then lifted and slammed Ms. Pachote to the ground. In my opinion, when Deputy Nelson grabbed Ms. Pachote by the ponytail, she escalated the incident into unnecessary and excessive violence. As such, Deputy Nelson's use of force in this set of facts was exceptionally reckless and beyond Ms. Pachote's ability to control or mitigate.

(Dkt. No. 122-2.)

Here, again, Clark's opinion would usurp the roll of the jury in determining what the facts were and whether Plaintiff merely attempted to retreat into her own home or whether she closed the screen door on Nelson. And, again, Clark opines on the ultimate legal issue – whether Nelson used excessive force. Therefore, the Court GRANTS Defendants' motion as to Opinion Number 2.

### 3.    Opinion 3.

Clark's Opinion Number 3 is as follows:

> The physical and injurious force inflicted on Ms. Pachote was illegal criminal conduct, including a violation of 149 PC - Assault Under Color of Authority. (As trained.)

(Dkt. No. 122-2.)

Clark cannot opinion as to whether Defendants committed a crime. The Court thus GRANTS Defendants' motion as to Opinion Number 3.

5

### 4.    Opinion 4.

Clark's Opinion Number 4 is as follows:

> Throughout the country, Officers are trained regarding the methods and means of response when dealing with citizens; above all, they are required to be ethical and professional in their contacts with citizens. In this instance, Deputy Nelson grabbed Ms. Pachote by her ponytail and dragged her out of her residence. Ms. Pachote was unarmed, frightened, and no threat to the Defendant's safety; therefore, Deputy Nelson used unnecessary and excessive force against Ms. Pachote, who had every right to close her door. Deputy Nelson's excessive use of force cannot be excused or explained away, and violated policy, law, and Ms. Pachote's constitutional rights.

(Dkt. No. 122-2.)

Similar to Opinion Number. 1, the Court GRANTS IN PART and DENIES IN PART Defendant's motion as to Opinion Number 4. Clark may testify as to the training officers receive in POST regarding contacts with citizens. Moreover, given a *hypothetical* set of facts, Clark may opine as to whether such hypothetical facts comply with such training, so long as the facts supporting the hypothetical are based on evidence in the record at trial. However, Clark may not opine as to whether Defendants' encounter with Plaintiff actually violated such training or whether Nelson in fact used excessive force.

### 5.    Opinion 5.

Clark's Opinion Number 5 is as follows:

> Taking Ms. Pachote's set of facts as true, that she never threatened or accosted Deputy Nelson, then Deputy Nelson submitted a false statement when she stated that Ms. Pachote assaulted her, which was in violation of CCSO policy, POST training and the Law (as taught by POST).
>
> "Any officer who knowingly files a false report will be guilty of a crime. (Penal Code Section 118.1)" (POST Learning Domain #18: "Investigative Report Writing," page 1-4.)
>
> "All reports are to be true, unbiased, and unprejudiced. These are easy words to say, but sometimes hard to live by. It is not always easy to know or find out the truth. Clearly it is the peace officer's moral obligation to seek the truth, lying is wrong. *Truth and public trust cannot be separated.*" (POST Learning Domain #18: "Investigative Report Writing," pages 1-5. Emphasis Added.)
>
> "When writing a report, the minimum requirements to accomplish your job ethically and preserve the integrity of the criminal justice system are:

United States District Court
Northern District of California

United States District Court
Northern District of California

"Never falsify any portion of your report or modify any aspect of the report away from the factual truth.

*"Objectively document every fact (or piece of evidence) known to you that could prove or disprove the event you are reporting. If you are not sure, include the fact or piece of evidence anyway and qualify it as possible evidence or investigative information.*

"Be clear. A well-written report does not raise questions, it answers them.

"Write your report free of speculation or personal opinions. You are there to gather facts.

"You are responsible for the quality of each report you write. Each report is an opportunity to build or destroy your credibility. Always write precisely what happened to the best of your knowledge. A report determined by a court to be compromised or unethical not only topples your credibility, but your agency's as well – plus it opens the door to challenge every past enforcement action you have performed. Compromising your report is just not worth it and it will raise questions about your effectiveness as a peace officer and may ultimately lead to termination of your employment. *It is your obligation to report incidents just as they occurred; anything else is unethical.*" (POST Learning Domain #1: Chapter 2 - "Professionalism and Ethics in Policing." Emphasis Added.).

(Dkt. No. 122-2 (emphasis in original).)

Plaintiff does not allege that Nelson submitted a false statement. Therefore, any opinions regarding Nelson's statement are irrelevant to Plaintiff's claims and are excluded on this basis. In addition, courts have excluded expert testimony from police practice experts such as Clark on whether police reports were false or misleading as impermissible legal conclusions. *See Toland v. McFarland*, 2023 WL 8883329, at *7 (C.D. Cal. Oct. 31, 2023); *Godinez v. Huerta*, 2018 WL 2018048, at *6 (S.D. Cal. May 1, 2018); *Cooke v. City of Stockton*, 2017 WL 6447999, at *6 (E.D. Cal. Dec. 18, 2017). Therefore, the Court GRANTS Defendant's motion as to Opinion Number 5.

**6.      Opinion 6.**

Clark's Opinion Number 6 is as follows:

Taking Ms. Pachote's set of facts as true, that she only tried to close her door, then Deputy Thomas failed in his duty to intervene with Deputy Nelson's use of unnecessary and excessive force against Ms. Pachote:

"The community expects that its peace officers will use only reasonable amounts of force. Likewise, it expects that someone, including peace officers, will intervene if reasonable force is

United States District Court
Northern District of California

> exceeded. For the community and the officer's protection, the officer must know the laws pertaining to intervention.
>
> "Peace officers are required by their position to intervene in any force situation they perceive as excessive." (POST Learning Domain: #20 "Use of Force," Chapter 6 - Consequences of Unreasonable Force, page 6-7.)
>
> "The United States Constitution protects individuals from unlawful actions of peace officers. NOTE: The officer who fails to intervene, for whatever reason, is also held accountable by the United States Code." (POST Learning Domain: #20 "Use of Force," Chapter 6 - Consequences of Unreasonable Force, page 6-8.).

(Dkt. No. 122-2.)

Again, Clark is opining about what the facts are, which invades the province of the jury. In addition, determining whether Nelson used excessive force is an ultimate legal conclusion. Finally, the Court notes that Plaintiff did not bring a claim against Thomas for failure to intervene. Therefore, any opinions on that issue are not relevant. Accordingly, the Court GRANTS Defendants' motion as to Opinion Number 6.

### 7.   Opinion 7.

Clark's Opinion Number 7 is as follows:

> In this set of facts, Ms. Pachote had a reasonable fear that the police contact at her door would identify her as a police informant and put her and her children at risk of retaliation - including the risk of great bodily harm or death. I agree. This is a common circumstance in cases involving reports of gang gunfire. When there are indications that an informant does not want direct police contact, other methods are required. They include telephone contact and/or remote interviews in a safe and confidential location. In my opinion, the police response to Ms. Pachote's door without her consent put her in a significant unnecessary danger.

(Dkt. No. 122-2.)

Clark does not discuss or even mention any POST training or any other basis for his opinions, on citizen's fear of police contact when they are informing on gang activity. Therefore, Clark fails to adequately explain the factual basis for this opinion. *Palantir Techs.*, 2022 WL 22913842, at *12 (excluding opinion where expert failed to provide any basis for his opinion.); *640 Octavia*, 2019 WL 1201581, at *2 (N.D. Cal. Mar. 14, 2019) (excluding expert report because expert failed to explain how and why he came to his conclusions and instead, engaged "in inadmissible *ipse dixit*"). The Court thus GRANTS Defendants' motion as to Opinion No. 7.

8

**8.    Opinion 8.**

Plaintiff does not dispute that Opinion Number 8 is not relevant as it concerns a *Monell* violation, and Plaintiff does not bring a *Monell* claim here.  (Dkt. No. 124 at p. 13 ("Plaintiff concedes that Mr. Clark's eighth opinion is not probative given that Plaintiff does not bring a *Monell* claim.").)  Accordingly, the Court GRANTS Defendants' motion as to Clark's Opinion Number 8.

<strong>CONCLUSION</strong>

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to exclude Clark's opinions.  Clark may testify as to the training officers receive in POST regarding consensual encounters with citizens.  Moreover, given a *hypothetical* set of facts, Clark may opine as to whether such hypothetical facts constitute a consensual encounter with a citizen.  However, any hypotheticals must be based on the facts in evidence at trial.  The Court GRANTS the motion as to the remainder of Clark's opinions.

**IT IS SO ORDERED**.

Dated: August 1, 2025



SALLIE KIM
United States Magistrate Judge